FILED ___ LODGED
RECEIVED ___ COPY

MAR 01 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Tammy Ashbrook
1045 E. Bart Street
Gilbert, Arizona 85295
Phone: 480.620.0617
Email: tashbrook3@gmail.com
Plaintiff pro se

# IN THE UNITED STATES DISTRICT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tammy Ashbrook,<br><br>                              Plaintiff,<br><br>vs.<br><br>Brown & Brown Chevrolet, Inc., a domestic for-profit corporation; Mesa Collision, Inc. dba AutoNation Collision Center Mesa, a foreign for-profit corporation,<br><br>                              Defendants. | Case No.  **CV21-00353-PHX-JZB**<br><br>**COMPLAINT AND REQUEST FOR JURY TRIAL** |

Defendants Brown & Brown Chevrolet, Inc. and Mesa Collision Inc. dba AutoNation Collision Center Mesa subjected Plaintiff Tammy Ashbrook, an Office Administrator, to 1) discrimination based on sex (including a hostile work environment) and 2) retaliation after she complained about the discriminatory treatment in violation of Title VII of the Civil Rights Act, which resulted in working conditions so intolerable that Tammy was forced to quit.

## I. Plaintiff's Claims

1.     Plaintiff brings the following claims against Defendants:

   a.   Title VII, 42 U.S.C. § 2000(e)-2(1) – Discrimination Based on Sex; and

Page 1 of 11

b. Title VII, 42 U.S.C. § 2000(e)-3(a) – Retaliation for Reporting Sex Discrimination.

## II. The Parties, Jurisdiction, and Venue.

2. Plaintiff, Tammy, is and has been at all relevant times,

    a. a resident of the State of Arizona, in the County of Maricopa County;

    b. a person whose sex is female; and

    c. an employee of Defendants

3. Defendants

    a. employed Tammy within the meaning of 42 U.S.C. §§ 2000e(f) and 2000e(b) of Title VII; and

    b. had and continue to have a place of business in Maricopa County, Arizona at all times relevant to the allegations in this Complaint and continuously had at least 15 employees at relevant times.

4. AutoNation Collision Center Mesa is a trademark owned, registered, or used by Defendant Mesa Collision, Inc.

5. All acts complained of took place in Maricopa County, Arizona, and Defendants employed Tammy in Maricopa County, Arizona.

6. This Court has subject matter jurisdiction over the claims alleged in this Complaint.

7. Jurisdiction in this case is based on a federal question under 28 U.S.C. § 1331.

8. Based upon the foregoing, the United States District Court for the District of Arizona, Phoenix Division, is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b).

9. All conditions precedent to filing a lawsuit have been met. *See* 42 U.S.C. § 2000e-5.
   a. Tammy filed her charge (540-2020-03530) with the EEOC on November 7, 2020.
   b. The EEOC issued Tammy her right to sue on or about December 2, 2020.

### III. Facts.

10. Tammy incorporates and restates the allegations in this Complaint.

11. Tammy began working for Defendants on March 13, 2019 as an Office Administrator.

12. She performed her job duties satisfactorily and was never reprimanded.

13. Tammy enjoyed her job and planned to remain employed there long-term.

### Defendants Subjected Tammy to Discrimination Based on Her Sex, Including by Creating a Hostile Work Environment.

14. Between about May 2019 and April 2020, Tammy's coworker, John McArthur, subjected Tammy at least weekly to demeaning and condescending comments to Tammy to her, but not to men. For example, he:
   a. Undermined and belittled Tammy's work, making her seem unqualified for her job, humiliating her frequently in front of other employees or customers;

b. Described Tammy as "incompetent staff who can't retrieve the file" to a customer;

c. Acted aggressively toward her, including when he threw a paper at her, snapping at her when he was on the phone, to which he demanded, "Can't you see I'm busy?"

d. Insulted her saying, "When are you going to learn to read the notes in the file?" The reason she asked the questions was because his notes were incomplete.

e. In front of coworkers, telling an employee he "need[s] to understand Tammy is unable to read notes," or that she needs to listen to him;

f. Patronized Tammy, saying things like, "Do you have a problem with pronunciation [of coworker's name]?" or "Did you look where the file was supposed to be?" after he left the files in the wrong place forcing her to hunt them down;

g. Refused to answer his phone or help customers after a certain time of day.

h. Refused to answer her questions on customer files, saying things like, "Did you look at the clock to see what time it is? I leave at 5:00 and I don't take any customers after 4:40pm." It was against company policy to refuse to help customers before the end of a shift;

i. Without any reason, yelled "No, I'm married!" when Tammy asked if he was available to help a customer;

j. Refused to work on customer files on various occasions, unless customers first completed non-existent forms, saying, "Did you have them fill out the [form] completely? If not, don't give it to me."; and

k. Made similar comments to other women making at least one woman cry and, upon information and belief, making more than one woman quit.

15. At least one other female employee reported McArthur's harassment of her to management, but management failed to stop the harassment.

16. Tammy's male coworkers did not experience the type of harassment McArthur subjected Tammy to.

**Tammy Complained to Defendants About the Harassment, But the Harassment Continued.**

17. Manager Jon Dixon observed McArthur harass Tammy, but the harassment continued.

18. Tammy also reported other acts of discrimination to Dixon. For example,

a. In May 2019, Tammy reported to Dixon that McArthur called her incompetent, but Dixon merely brushed it off as being in "jest" even though Dixon was present.

b. In January 2020, Tammy complained to Dixon about McArthur's harassment, but Dixon stated, "That is just John," and "You have to do what you have to do."

c. In March 2020, Tammy again complained to Dixon. Dixon scheduled a meeting between Tammy, Debbie, McArthur, another male coworker, and himself. At the meeting, Dixon did not reprimand McArthur or

address Tammy's concerns of discrimination, but simply stated policies must be followed. He only resent an email originally sent in December 2019 outlining the company's procedure that Estimators like McArthur must address customer questions.

19.   Tammy also reported McArthur's conduct to HR. Between about April 8 and April 17, 2020, Tammy left about four voicemails to Defendants' HR representative Nancy Sanchez, who did not answer the phone or call Tammy back.

20.   Finally, on about April 24, 2020, Tammy was able to reach Nancy. Tammy reported McArthur's sex-based discrimination, including the harassing comments and disparate treatment, as well as Dixon's failure to mediate the situation. Nancy promised to look into the situation the following Monday. On Monday, April 27, Nancy emailed Tammy that, "Today got extremely busy on my end, but will be reviewing the items we discussed on Friday."

21.   On May 5, Sanchez emailed Tammy claiming that her concerns were addressed on April 28—even though nobody from HR or management reached out to Tammy about her concerns. To Tammy's knowledge, no investigation occurred and McArthur was not reprimanded as a result of the complaint.

22.   As a result of the discrimination and retaliation, Tammy has suffered trauma, depression, and anxiety.

**Defendants Forced Tammy to Quit.**

23.  Following about a year of a regular barrage of toxic behavior that was generally known to Defendants because McArthur subjected multiple women to the harassment in front of customers, co-workers, at least one manager, and was reported to at least one manager and HR by multiple female workers, Tammy was forced to resign on May 4, 2020.

### IV. Demand for Jury Trial

24.  Plaintiff Tammy demands a trial by jury pursuant to the Seventh Amendment of the United States Constitution, and Federal Rules of Procedure 38(a), (b).

### Count I
### Title VII Discrimination Based Upon Sex
### Disparate Treatment – Hostile Work Environment
### 42 U.S.C. § 2000e-2(a)(1)

25.  Tammy re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

26.  Defendants discriminated against and harassed Tammy in violation of 42 U.S.C. § 2000e-2(1) based on sex, including by treating her differently because of sex, subjecting her to severe or pervasive conduct, including sex based-comments, creating a hostile work environment.

27.  Tammy reasonably perceived her working environment to be abusive or hostile and a reasonable woman in her circumstances would find such working environment to be abusive or hostile.

28. Defendants knew or should have known about the harassment and failed to take prompt, effective remedial action reasonably calculated to end the harassment.

29. Defendants failed to stop the harassment, ultimately constructively discharging her because the working conditions were so intolerable that a reasonable woman in the plaintiff's position would feel compelled to resign.

30. As a direct and proximate result of the conduct by Defendants, Tammy is entitled to compensatory damages including for pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, and nightmares. She is reasonably likely to incur more compensatory damages in the future.

31. Injunctive relief should be granted for Tammy against Defendants to prevent further acts of discrimination, particularly since the Defendants appear to be oblivious to its duties and liabilities under 42 U.S.C. § 2000(e)-2(1).

32. The unlawful employment practices complained of were intentional.

33. Tammy seeks a judgment for the following:

   a. Compensatory and general damages in an amount to be determined by the trier-of-fact;

   b. Punitive damages;

   c. Monetary damages, including lost wages, salary, employment benefits, and other compensation, in an amount to be proven at trial;

d.  Reinstatement, or front pay in lieu of reinstatement;

e.  Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to Tammy;

f.  Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

g.  Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

## Count II
### Title VII Retaliation for Reporting Sex-Based Discrimination
### 42 U.S.C. § 2000e-3(a)

34.  Tammy re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim. Defendants retaliated against Tammy in violation of U.S.C. § 2000e-3(a) and including subjecting her to further harassment because of her complaints about sex discrimination.

35.  Tammy reasonably perceived her working environment to be abusive or hostile and a reasonable woman in her circumstances would find such working environment to be abusive or hostile.

36.  The retaliatory harassment ultimately constructively discharged her because the working conditions were so intolerable that a reasonable woman in the plaintiff's position would feel compelled to resign.

37.   As a direct and proximate result of the conduct of the Defendants, Tammy is entitled to compensatory damages including for lost earnings and benefits, decrease in earnings power or capacity, pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, and harmed reputation at work and her industry. Tammy is also reasonably likely to incur more compensatory damages in the future.

38.   The unlawful employment practices complained of were intentional.

39.   Tammy seeks a judgment for the following:

   a.   Compensatory and general damages in an amount to be determined by the trier-of-fact;

   b.   Punitive damages;

   c.   Monetary damages, including lost wages, salary, employment benefits, and other compensation, in an amount to be proven at trial;

   d.   Reinstatement, or front pay in lieu of reinstatement;

   e.   Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to Tammy;

   f.   Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

   g.   Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

WHEREFORE, Tammy prays for the following relief:

1. For a declaration that Defendants violated her rights under Title VII.

2. All relief available under Title VII.

3. For injunctive relief, including a permanent injunction prohibiting Defendants from engaging in discrimination under Title VII.

4. Compensatory damages.

5. Punitive damages.

6. For lost wages.

7. For reinstatement or front pay in lieu of reinstatement.

8. For compensation for past and future non-pecuniary losses resulting from the unlawful practices under Title VII.

9. For interest on the above amounts at the highest legal rate from the date of Judgment until paid in full.

10. For reasonable attorneys' fees.

11. Taxable costs.

12. All other relief the court shall deem is just.


DATED this 1st day of March 2021.

Tammy Ashbrook